## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| RODNEY MASON, Individually and For Others Similarly Situated | **Case No.** _____ |
| | Jury Trial Demanded |
| v. | |
| | FLSA Collective Action |
| YELLOWSTONE LANDSCAPE, INC. | Pursuant to 29 U.S.C. § 216(b) |

### ORIGINAL COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.     Rodney Mason (Mason) brings this collective action to recover unpaid wages and other damages from Yellowstone Landscape, Inc. (Yellowstone).

2.     Mason worked for Yellowstone as a Landscaper.

3.     Like the Putative Class Members (as defined below), Mason regularly worked more than 40 hours in a workweek.

4.     But Yellowstone does not pay its Landscapers, including Mason and the Putative Class Members, for all the hours they work.

5.     Instead, Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to perform compensable work "off the clock" before and after their scheduled shifts.

6.     Specifically, before clocking in for their shifts, Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to arrive at their designated Yellowstone facility; obtain their daily client assignments; prepare the

necessary landscaping tools, equipment, and materials; load the same onto Yellowstone's company trucks; and travel to their assigned jobsites.

7.      Likewise, after clocking out for their shifts, Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to load the landscaping tools, equipment, and materials back onto Yellowstone's company trucks; travel back to their designated Yellowstone facility; and unload and clean these necessary tools and equipment.

8.      But Yellowstone does not pay Mason and the Putative Class Members for this compensable pre- and post-shift "off the clock" work.

9.      Rather, Yellowstone only pays its Landscapers, including Mason and the Putative Class Members, for their hours worked *physically at their assigned jobsite* (Yellowstone's "jobsite pay scheme").

10.     Yellowstone's uniform jobsite pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Mason and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has general personal jurisdiction over Yellowstone because Yellowstone maintains its headquarters and principal place of business in Bunnell, Florida and, therefore, resides in the State of Florida.

13.    Venue is proper because Yellowstone is headquartered in Bunnell, Florida, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14.    Mason worked for Yellowstone as a Landscaper in and around Houston, Texas from approximately January 2021 until August 2022.

15.    Throughout his employment, Yellowstone paid Mason on an hourly basis.

16.    Throughout his employment, Yellowstone required Mason to work "off the clock" before and after his scheduled shifts.

17.    But Yellowstone did not pay Mason for the time he spent performing compensable work "off the clock" before and after his shifts, including the time he spent preparing his necessary landscaping tools and equipment and the time he spent traveling between Yellowstone's facility and the jobsite.

18.    Rather, throughout his employment, Yellowstone subjected Mason to its jobsite pay scheme and only paid him for the hours he worked *physically at* his assigned job site.

19.    Mason's written consent is attached as **Exhibit 1**.

20.    Mason brings this action on behalf of himself and other similarly situated Landscapers who worked for, or on behalf of, Yellowstone who were subject to Yellowstone's jobsite pay scheme.

21.    Yellowstone uniformly requires its Landscapers to perform compensable work "off the clock" before and after their shifts, including obtaining

job assignments, preparing the necessary landscaping tools and equipment, loading Yellowstone's company trucks, and traveling between Yellowstone's facility and jobsites.

22.    But Yellowstone fails to pay its Landscapers for this compensable work time.

23.    Instead, Yellowstone only pays its Landscapers for their hours worked *physically at* their assigned jobsites.

24.    Thus, Yellowstone uniformly deprives its Landscapers of overtime wages for all overtime hours worked in violation of the FLSA.

25.    The Putative Class of similarly situated employees is defined as:

> **All Landscapers who worked for, or on behalf of, Yellowstone who were subject to Yellowstone's jobsite pay scheme at any time during the past 3 years ("Putative Class Members").**

26.    Yellowstone is a Delaware corporation that maintains its headquarters in Bunnell, Florida.

27.    Yellowstone may be served with process by serving its registered agent: **Corporate Service Company, 1201 Hays Street, Tallahassee, Florida 32301**.

### COVERAGE UNDER THE FLSA

28.    At all relevant times, Yellowstone was and is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29.    At all relevant times, Yellowstone was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

30.    At all relevant times, Yellowstone was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cellphones, landscaping tools, and personal protective equipment – that have been moved in or produced for commerce.

31.    In each of the past 3 years, Yellowstone has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

32.    At all relevant times, Mason and the Putative Class Members were Yellowstone's "employees" within the meaning of Section 3(e)(1) of the FLSA. 29 U.S.C. § 203(e)(1).

33.    At all relevant times, Mason and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

34.    Yellowstone uniformly requires its Landscapers, including Mason and the Putative Class Members, to perform compensable work "off the clock" before and after their shifts, including obtaining daily job assignments, preparing the necessary landscaping tools and equipment, loading Yellowstone's company trucks, and traveling between Yellowstone's facility and jobsites.

35.    But Yellowstone fails to pay Mason and the Putative Class Members for this compensable work time, including overtime wages, in violation of the FLSA.

36.    Instead, Yellowstone only pays Mason and the Putative Class Members for their hours worked *physically at* their assigned jobsites.

37.    Yellowstone's uniform jobsite pay scheme deprives Mason and the Putative Class Members of overtime compensation for all hours worked after 40 in a workweek.

38.    Thus, Yellowstone's uniform jobsite pay scheme violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

39.    Yellowstone is a commercial landscaping company "[w]ith more than 50 locations across the United States [and] serving over 5,000 properties:"[1]



---

[1] https://www.yellowstonelandscape.com/locations (last visited July 21, 2023).

40.    To complete its business objectives, Yellowstone hires Landscapers, including Mason and the Putative Class Members, to provide commercial landscaping services to its clients.

41.    Yellowstone does not hire these Landscapers, including Mason and the Putative Class Members, on a project-by-project basis.

42.    Rather, Yellowstone hires and treats its Landscapers, including Mason and the Putative Class Members, just like regular employees.

43.    In fact, Yellowstone controls all meaningful aspects of Mason's and the Putative Class Members' jobs and employment conditions.

44.    Yellowstone controls Mason's and the Putative Class Members' rates and methods of pay.

45.    Yellowstone controls Mason's and the Putative Class Members' schedules and assignments.

46.    Yellowstone controls Mason's and the Putative Class Members' work.

47.    Yellowstone requires Mason and the Putative Class Members to follow Yellowstone's policies, procedures, protocols, and specifications.

48.    Mason's and the Putative Class Members' work must strictly adhere to the quality standards put in place by Yellowstone.

49.    Mason and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

50.　　The daily and weekly activities of Mason and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Yellowstone.

51.　　Virtually every job function is predetermined by Yellowstone, including the tools, equipment, and materials used; how to perform their landscaping duties; what to wear; the schedule of work; and related work assignments.

52.　　Yellowstone prohibits Mason and the Putative Class Members from varying their job duties outside of these predetermined parameters and requires its Landscapers to follow Yellowstone's strict policies, procedures, protocols, and directives.

53.　　Mason and the Putative Class Members do not set the techniques and procedures utilized to perform their landscaping job duties, and these employees do not set quality standards.

54.　　Rather, Yellowstone requires Mason and the Putative Class Members to perform their landscaping job duties in strict accordance with Yellowstone's quality control standards.

55.　　Without the landscaping work Mason and the Putative Class Members perform, Yellowstone would not be able to complete its business objectives of providing commercial landscaping services to its clients across the country.

56.　　Mason and the Putative Class Members rely on Yellowstone for work and compensation.

57.     Mason and the Putative Class Members cannot subcontract out the work Yellowstone assigns them.

58.     Mason and the Putative Class Members do not substantially invest in the tools, equipment, and/or materials necessary to complete the overall landscaping job they are assigned.

59.     Rather, Yellowstone incurs the large-scale business and operating expenses like marketing, payroll, and landscaping equipment, tools, and materials.

60.     Yellowstone sets Mason's and the Putative Class Members' work schedule, which prohibits them from working other jobs for other companies while working for Yellowstone.

61.     Yellowstone maintains control, oversight, and direction of Mason and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, quality and performance standards, hours worked, and other employment practices.

62.     In sum, based on the economic realities of the employment setting in which Mason and the Putative Class Members work for Yellowstone, these Landscapers are clearly Yellowstone's employees within the meaning of the FLSA.

63.     Yellowstone uniformly pays its Landscapers, including Mason and the Putative Class Members, on an hourly basis.

64.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

65.     For example, Mason worked for Yellowstone as a Landscaper in and around Houston, Texas from approximately January 2021 until August 2022.

66.     As a Landscaper, Mason's primary responsibilities included trimming trees and bushes, cutting grass, planting flowers and other plants, irrigation and watering, weed eating, and removing debris.

67.     Throughout his employment, Yellowstone paid Mason on an hourly basis.

68.     Throughout his employment, Yellowstone required Mason to work "off the clock" before and after his scheduled shifts.

69.     But throughout his employment, Yellowstone never paid Mason for his compensable pre- and post-shift "off the clock" work, including the time he spent preparing his necessary landscaping tools and equipment and the time he spent traveling between Yellowstone's facility and the jobsite.

70.     Rather, throughout his employment, Yellowstone only paid Mason for the hours he worked *physically at* his assigned job site.

71.     Yellowstone requires Mason and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

72.     At the end of each pay period, Mason and the Putative Class Members received wages from Yellowstone that were determined by common systems and methods that Yellowstone selected and controlled.

73.    Yellowstone uniformly subjects its Landscapers, including Mason and the Putative Class Members, to its jobsite pay scheme.

74.    Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to submit daily timesheets to Yellowstone management.

75.    But Yellowstone prohibits its Landscapers, including Mason and the Putative Class Members, to record any hours they worked away from their assigned jobsite.

76.    In other words, Yellowstone only permits its Landscapers, including Mason and the Putative Class Members, to record the hours they worked *physically at their assigned jobsites* on their timesheets.

77.    But Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to perform compensable work "off the clock" before they arrive at their assigned jobsites and after they leave.

78.    Specifically, before clocking in for their shifts, Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to arrive at their designated Yellowstone facility; obtain their daily client assignments; prepare the necessary landscaping tools, equipment, and materials; load the same onto Yellowstone's company trucks; and travel to their assigned jobsites.

79.    Likewise, after clocking out for their shifts, Yellowstone requires its Landscapers, including Mason and the Putative Class Members, to load the landscaping tools, equipment, and materials back onto Yellowstone's company

trucks; travel back to their designated Yellowstone facility; and unload and clean these necessary tools and equipment.

80.    This mandatory and necessary pre- and post-shift "off the clock" work lasts approximately 1.5 to 2 hours per shift.

81.    But under its uniform jobsite pay scheme, Yellowstone prohibits its Landscapers, including Mason and the Putative Class Members, from recording these "off the clock" hours worked on their timesheets.

82.    Yellowstone knows its Landscapers, including Mason and the Putative Class Members, are required to perform compensable work "off the clock" before and after their shifts because Yellowstone not only requires these workers to do so, but also a substantial portion of their "off the clock" work is completed at Yellowstone's facilities.

83.    Yellowstone, however, fails to pay its Landscapers, including Mason and the Putative Class Members, for their mandatory and necessary pre- and post-shift "off the clock" work.

84.    But the FLSA requires Yellowstone to pay Mason and the Putative Class Members for this compensable work time.

85.    Indeed, Yellowstone mandates and requires Mason and the Putative Class Members to arrive at their designated Yellowstone facilities to obtain their assignments and prepare their trucks and landscaping materials before traveling to their assigned jobsites; Yellowstone requires these Landscapers to return their company trucks and landscaping materials to their designated Yellowstone

facilities after leaving their assigned jobsites; a substantial portion of this pre- and post-shift is completed on Yellowstone's premises; this pre- and post-shift is controlled by Yellowstone; and this pre- and post-shift is undertaken primarily for Yellowstone's landscaping business' benefit.

86.    Further, Mason's and the Putative Class Members' mandatory pre- and post-shift "off the clock" work is necessary to the principal landscaping work these Landscapers perform.

87.    Indeed, Yellowstone requires Mason and the Putative Class Members to complete this pre- and post-shift is to ensure its Landscapers have all their assignments, tools, equipment, and materials necessary to perform their landscaping services in accordance with Yellowstone's policies, procedures, and specifications.

88.    Thus, Mason's and the Putative Class Members' mandatory pre- and post-shift "off the clock" work is integral and indispensable to these employees' landscaping work.

89.    Indeed, Yellowstone could not have eliminated this pre- and post-shift "off the clock" work altogether without impairing Mason's and the Putative Class Members' ability to perform their landscaping work.

90.    And Yellowstone failed to exercise its duty as Mason's and the Putative Class Members' employer to ensure they were not performing work that Yellowstone did not want performed "off the clock."

91.    Despite accepting the benefits, Yellowstone did not pay Mason and the Putative Class Members for the time they spent performing compensable work away from their assigned jobsites "off the clock," before and after their shifts.

92.    Instead, Yellowstone only paid its Landscapers, including Mason and the Putative Class Members, for the hours they worked *physically at* their assigned jobsites.

93.    Thus, under Yellowstone's uniform jobsite pay scheme, Mason and the Putative Class Members are deprived of overtime pay for all overtime hours worked in violation of the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

94.    Mason incorporates all other paragraphs by reference.

95.    Mason brings his claims as a collective action on behalf of himself and the Putative Class Members pursuant to Section 216(b) of the FLSA.

96.    The Putative Class Members were uniformly victimized by Yellowstone's jobsite pay scheme, which was in willful violation of the FLSA.

97.    Other Putative Class Members worked with Mason and indicated they were paid in the same manner, performed similar work, and were subject to Yellowstone's same illegal job site pay scheme.

98.    Based on his experience with Yellowstone, Mason is aware Yellowstone's illegal practices were imposed on the Putative Class Members.

99.    The Putative Class Members are similarly situated in all relevant respects.

100.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

101.    Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

102.    Rather, the Putative Class is held together by Yellowstone's uniform jobsite pay scheme that systematically deprived Mason and the Putative Class Members of overtime pay for all overtime hours worked.

103.    The back wages owed to Mason and the Putative Class Members will be calculated using the same records and using the same formula.

104.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Yellowstone's records, and there is no detraction from the common nucleus of liability facts.

105.    Therefore, the issue of damages does not preclude collective treatment.

106.    Mason's experiences are therefore typical of the experiences of the Putative Class Members.

107.    Mason has no interest contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

108.    Like each Putative Class Member, Mason has an interest in obtaining the unpaid wages owed under federal law.

109.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

110.    Absent a collective action, many Putative Class Members will not obtain redress for their injuries, and Yellowstone will reap the unjust benefits of violating the FLSA.

111.    Further, even if some of the Putative Class Members could afford individual litigation against Yellowstone, it would be unduly burdensome to the judicial system.

112.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the claims of the Putative Class Members.

113.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

114.    Among the common questions of law and fact are:

    a.    Whether Yellowstone's jobsite pay scheme was uniformly applied to all its Landscapers working across the country;

    b.    Whether Yellowstone's jobsite pay scheme deprived Mason and the Putative Class Members of wages, including overtime wages, for compensable work time in violation of the FLSA;

    c.    Whether Yellowstone failed to pay Mason and the Putative Class Members overtime wages for all hours worked after 40

in a workweek, including hours worked away from their assigned jobsites, in violation of the FLSA;

d.    Whether Yellowstone knew, or had reason to know, Mason and the Putative Class Members were requested, suffered, permitted, or allowed to work unpaid "off the clock" in violation of the FLSA;

e.    Whether Yellowstone's decision not to pay Mason and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

f.    Whether Yellowstone's violations of the FLSA were willful.

115.    Mason knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

116.    As part of its regular business practices, Yellowstone intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Mason and the Putative Class Members.

117.    Yellowstone's illegal jobsite pay scheme deprived Mason and the Putative Class Members of the overtime wages for all overtime hours worked, which they are owed under federal law.

118.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

120.    Those similarly situated employees are known to Yellowstone, are readily identifiable, and can be located through Yellowstone's records.

### YELLOWSTONE'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

121.    Mason incorporates all other paragraphs by reference.

122.    Yellowstone knew the Landscapers who work on its behalf, including Mason and the Putative Class Members, were its employees.

123.    Yellowstone knew Mason and the Putative Class Members were its hourly employees.

124.    Yellowstone knew it was subject to the FLSA's overtime provisions.

125.    Yellowstone knew the FLSA required it to pay employees, including Mason and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked after 40 in a workweek.

126.    Yellowstone knew Mason and the Putative Class Members worked more than 40 hours in at least one workweek during the relevant time period because Yellowstone required these employees to do so.

127.    Yellowstone knew the FLSA required it to pay Mason and the Putative Class Members for all hours these employees performed compensable work.

128.   Yellowstone knew it prohibited its Landscapers, including Mason and the Putative Class Members, from recording any hours worked away from their assigned jobsites on their timesheets.

129.   Yellowstone knew it required its Landscapers, including Mason and the Putative Class Members, to arrive at their designated Yellowstone facilities to obtain their assignments and prepare their trucks and landscaping materials before traveling to their assigned jobsites.

130.   Yellowstone knew it required its Landscapers, including Mason and the Putative Class Members, to return their company trucks and landscaping materials to their designated Yellowstone facilities after leaving their assigned jobsites.

131.   Yellowstone knew Mason's and the Putative Class Members' mandatory pre- and post-shift "off the clock" work was necessary to the principal landscaping work these workers performed.

132.   Yellowstone knew that Mason's and the Putative Class Members' mandatory pre- and post-shift "off the clock" work was integral and indispensable to these employees' landscaping work.

133.   Thus, Yellowstone knew, should have known, or recklessly disregarded the fact that Mason's and the Putative Class Members' mandatory pre- and post-shift "off the clock" work was compensable under the FLSA.

134.    Yellowstone knew that, as Mason's and the Putative Class Members' employer, it had a duty to ensure these employees were not performing work that Yellowstone did not want performed "off the clock."

135.    Yellowstone knew it did not pay Mason and the Putative Class Members for all hours these employees performed compensable work, including time these employees worked "off the clock" away from their assigned jobsites.

136.    Nonetheless, Yellowstone only paid its Landscapers, including Mason and the Putative Class Members, for the hours they spent working *physically at* their assigned jobsites.

137.    Yellowstone's failure to pay Mason and the Putative Class Members for the time they spent working away from their assigned jobsites was neither reasonable, nor was the decision not to pay these employees for all their compensable work time made in good faith.

138.    Yellowstone's failure to pay Mason and the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

139.    Yellowstone knowingly, willfully, and/or in reckless disregard carried out its illegal jobsite pay scheme that deprived Mason and the Putative Class Members of overtime pay for all hours these employees worked after 40 in a workweek in violation of the FLSA.

140. In fact, Yellowstone's affiliated entities have been sued for failing to pay its employees for all overtime hours worked in violation of the FLSA. *See*, *e.g.*, *Garnelo v. Yellowstone Landscape – Central, Inc.*, No. 4:22-CV-00315 (S.D. Tex.).

<u>**CAUSE OF ACTION**</u>

**FAILURE TO PAY OVERTIME UNDER THE FLSA**

141. Mason incorporates all other paragraphs by reference.

142. Mason brings his FLSA claim as a collective action on behalf of himself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

143. Yellowstone violated, and is violating, the FLSA by employing Mason and the Putative Class Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including the hours these employees performed compensable work "off the clock" away from their assigned jobsites.

144. Yellowstone's unlawful conduct harmed Mason and the Putative Class Members by depriving them of the overtime wages they are owed.

145. Accordingly, Mason and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

**JURY DEMAND**

146. Mason demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Mason, individually and on behalf of the Putative Class Members, seeks the following relief:

a.  An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  An Order pursuant to Section 16(b) of the FLSA finding Yellowstone liable for unpaid overtime wages due to Mason and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid wages;

c.  Judgment awarding Mason and the Putative Class Members all unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

d.  An Order awarding attorney's fees, costs, and expenses;

e.  Pre- and post-judgment interest at the highest applicable rates; and

f.  Such other and further relief as may be necessary and appropriate.

Dated: July 25, 2023.                    Respectfully submitted,

                                         By:    /s/ C. Ryan Morgan
                                                C. Ryan Morgan, Esq.
                                                FBN 0015527
                                         **MORGAN & MORGAN, PA**
                                         20 N. Orange Ave., 16th Floor
                                         P.O. Box 4979
                                         Orlando, FL 32802-4979
                                         Telephone:  (407) 420-1414
                                         rmorgan@forthepeople.com
                                         *Local Counsel for Plaintiff*

                                         Michael A. Josephson*
                                         Andrew W. Dunlap*
                                         **JOSEPHSON DUNLAP, LLP**
                                         11 Greenway Plaza, Suite 3050
                                         Houston, Texas 77046
                                         Telephone:  (713) 352-1100
                                         Facsimile:   (713) 352-3300
                                         mjosephson@mybackwages.com
                                         adunlap@mybackwages.com

                                         Richard J. (Rex) Burch*
                                         **BRUCKNER BURCH, PLLC**
                                         11 Greenway Plaza, Suite 3025
                                         Houston, Texas 77046
                                         Telephone:  (713) 877-8788
                                         rburch@brucknerburch.com

                                         *Pro hac vice applications*
                                         *forthcoming*

                                         **ATTORNEYS FOR PLAINTIFF &
                                         THE PUTATIVE CLASS MEMBERS**